**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

**ARISOHN LLC**
Joshua D. Arisohn (to be admitted *pro hac vice*)
513 Eighth Avenue, #2
Brooklyn, NY 11215
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS FARRELL, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nicholas Farrell ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant LinkedIn Corporation ("Defendant") owns and operates linkedin.com ("LinkedIn" or the "Website").

2. This is a class action lawsuit brought on behalf of a class of persons who have accessed the LinkedIn.

3. Plaintiff brings this action in response to Defendant's practice of surreptitiously tracking users' devices for data about their installed browser extensions without their consent or knowledge.

4. Defendant's conduct, as alleged herein, constitutes: (i) a violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, *et seq.*; (ii) Invasion of Privacy under California's Constitution; (iii) Intrusion Upon Seclusion; and (iv) a violation of the California's Right of Publicity Law, Cal. Civ. Code § 3344.

## PARTIES

5. Plaintiff Nicholas Farrell is, and has been at all relevant times, a resident of Oakland, California and has an intent to remain there, and is therefore a domiciliary of California. Plaintiff has been a regular user of LinkedIn for more than ten years.  He regularly uses Google Chrome as his Internet browser and has long had several browser extensions installed.

6. Defendant LinkedIn Corporation is a Delaware corporation with its principal place of business at 1000 West Maude Avenue, Sunnyvale, CA 94085.  Defendant owns and operates the Website, which is used throughout the United States.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2) because this is a civil action in which the matter in controversy exceeds the sum of $5

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    2

million and is a class action in which one or more class members is a citizen of a State different from Defendant.

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTUAL BACKGROUND**

*Defendant's Surreptitious Scanning for Browser Extensions*

11.    When users visit LinkedIn, Defendant executes hidden scripts that scan their browser for installed extensions and it then transmits that data to third parties without users' consent or knowledge.

12.    According to a recent investigation conducted by the European advocacy group Fairlinked e.V., under the campaign name "BrowserGate" (the "BrowserGate Report"), Defendant scans users' computers for thousands of different browser extensions by name.

13.    These browser extensions—small software modules that can be added onto a web browser for enhanced functionality—often reveal sensitive private information about its users.[1] For instance, Defendant's scans for browser extensions reveal:

- **Political opinions** of users, through extensions like "Anti-woke," "Anti-Zionist Tag," and "No more Musk"

- **Religious beliefs**, through extensions like "PordaAI" (blur haram content) and "Deen Shield" (blocks haram sites)

- **Disability and neurodivergence**, through extensions like "simplify" (for neurodivergent users)

- **Employment status**, through 509 job search extensions that reveal who is looking for work on the very platform where their current employer can see their profile

- **Trade secrets** of millions of companies, by mapping which

---

[1] BrowserGate, *LinkedIn Is Illegally Searching Your Computer*, https://browsergate.eu/.

organizations use which competitor products, from Apollo to ZoomInfo.[2]

14.    Each time a user loads a LinkedIn page on a Chrome browser, a fingerprinting script executes silently, looking for known browser extension identifiers.[3]  "If a file loads, the extension is confirmed present.  If not, it isn't.  The entire scan takes milliseconds, and the user sees absolutely nothing."[4]

## Data Flow Summary

```
1. User opens LinkedIn in a Chrome-based browser
        |
        ▼
2. Webpack loads chunk.905 (~2.7 MB)
        |
        ├──► APFC/DNA engine initializes
        |     Collects 48 browser fingerprinting features
        |     (canvas, WebGL, audio, fonts, hardware, network, battery...)
        |
        ├──► AED: fetchExtensions()
        |     Fires up to 6,222 fetch() requests to chrome-extension:// URLs
        |     Collects IDs of every installed extension that responds
        |     Fires AedEvent with browserExtensionIds[]
        |
        ├──► Spectroscopy: scanDOMForPrefix()
        |     Walks the entire DOM tree
        |     Searches every text node and attribute for "chrome-extension://"
        |     Fires SpectroscopyEvent with browserExtensionIds[]
        |
        ├──► HUMAN Security iframe (li.protechts.net, hidden, 0×0 px)
        ├──► Merchant Pool script (merchantpool1.linkedin.com)
        └──► reCAPTCHA v3 Enterprise
        |
        ▼
3. All data encrypted with RSA public key (apfcDfPK)
        |
        ▼
4. Transmitted to:
     https://www.linkedin.com/li/track
     /platform-telemetry/li/apfcDf
     /apfc/collect
        |
        ▼
5. Encrypted fingerprint stored on globalThis.apfcDf
     Injected as HTTP header into every subsequent API request
     LinkedIn receives the fingerprint with every action you take
```
[5]

[2] BrowserGate, *Executive Summary*, https://browsergate.eu/executive-summary/.
[3] CYBER SECURITY NEWS, *LinkedIn Hidden Code Secretly Searches Your Browser for Installed Extensions*, https://cybersecuritynews.com/linkedin-code-collects-data/.
[4] *Id.*
[5] BrowserGate, *The Attack: How it works*, https://browsergate.eu/how-it-works/.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    4

15. The number of browser extensions that Defendant tracks has grown significantly over time.

## Growth Rate

| Date | Extensions in the scan list |
|---|---|
| 2017 | 38 |
| 2024 | ~461 |
| May 2025 | ~1,000 |
| December 2025 | 5,459 |
| February 2026 | 6,167 |

"The system is not static.  It is actively maintained and expanding."[6]

16. Defendant tracks other browser characteristics as well, including users' "Do Not Track" preferences.  But it then "excludes [that preference] from the fingerprint hash."[7]  In other words: "They record that you asked not to be tracked.  Then they track you."[8]

17. Once Defendant compiles the results, it "transmits everything back to LinkedIn's servers and to third-party companies."[9]  For instance, Defendant feeds the browser data to HUMAN Security (formerly PerimeterX), an American-Israeli cybersecurity firm, using "a zero-pixel-wide element hidden off-screen that sets cookies without user knowledge."[10]  The cookies are surreptitiously set within users' browsers.[11]

18. Another "script from Google executes silently on every page load."[12]

19. Notably, Defendant "has not disclosed this practice in its Privacy Policy.  There is no mention of extension scanning in any public-facing document" of Defendant.[13]

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] CYBER SECURITY NEWS, *LinkedIn Hidden Code Secretly Searches Your Browser for Installed Extensions*, https://cybersecuritynews.com/linkedin-code-collects-data/.
[10] *Id.*
[11] *See id.*
[12] *Id.*
[13] BrowserGate, *Executive Summary*, https://browsergate.eu/executive-summary/.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                        5

20.     In fact, Defendant has gone to great lengths to hide this tracking from users and the public.  According to the BrowserGate Report, "[s]everal implementation choices reveal that this system was designed to avoid detection":

- **Idle execution.** The scan can be deferred to requestIdleCallback, which runs the code only when the browser has no other work to do. The user sees no performance degradation, no spinning indicator, no delay.

- **Staggered probing.** The sequential scan mode introduces a configurable delay between each fetch() request, spreading thousands of network requests over time instead of firing them in a single burst that might appear in developer tools or network monitors.

- **Hidden iframe.** The HUMAN Security (PerimeterX) integration loads a hidden iframe from li.protechts.net that is 0 by 0 pixels, positioned at left: -9999px, and marked aria-hidden="true" (lines 9536 to 9552).

- **Silent error handling.** Failed fetch() requests are caught with empty catch blocks. No errors are logged to the console. No warnings are shown.

- **RSA encryption.** The fingerprint payload is encrypted before transmission. Even if a user inspects the network request in developer tools, the payload contents are not readable.[14]

21.     "What makes this surveillance uniquely dangerous is context: LinkedIn accounts are tied to real names, employers, and job titles."[15]

> Users register with their real names.  Many are verified with photo ID . . . .  This means LinkedIn does not just know that someone has a religious browser extension installed.  It knows that person's name, employer, job title, department, location, and professional network.  And it knows the same about every one of their colleagues who also uses LinkedIn.  That is not a privacy breach. That is an intelligence operation.[16]

22.     The BrowserGate Report provides the following examples of how Defendant can

---

[14] *Id.*

[15]  CYBER SECURITY NEWS, *LinkedIn Hidden Code Secretly Searches Your Browser for Installed Extensions*, https://cybersecuritynews.com/linkedin-code-collects-data/.

[16] BrowserGate, This Is Not Just a Privacy Violation, https://browsergate.eu/the-deeper-problem/.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    6

use its tracking to profile real people:[17]

> On an anonymous platform, knowing that a user has the PordaAI extension installed tells you that an anonymous account belongs to a practicing Muslim. That is a privacy violation, but the damage is limited by the anonymity.

> On LinkedIn, the same data point is attached to a verified identity. LinkedIn does not just know that someone is a practicing Muslim. It knows that Fatima A., Senior Policy Advisor at the German Federal Ministry of the Interior, Berlin, is a practicing Muslim. Because she has a LinkedIn profile with her real name, real photo, real employer, and real title. And because LinkedIn's JavaScript probed her browser and found PordaAI installed.

> The same logic applies to every category of extension LinkedIn scans for:

> **Political opinions.** If LinkedIn detects "Anti-Zionist Tag" or "No more Musk" on the browser of a named, verified professional, it has not just collected political opinion data. It has tied that political opinion to a specific person at a specific organization. A diplomat. A procurement officer. A journalist. A judge.

> **Health and disability.** If LinkedIn detects "simplify" (described as "for neurodivergent users") on the browser of someone who lists their employer as a law firm, a hospital, or a public school district, LinkedIn now knows that a named employee at that organization has a neurological condition. This is information that employers are legally prohibited from asking about in most jurisdictions, and that LinkedIn has no right to collect.

> **Employment status.** If LinkedIn detects one of the 509 job search extensions on the browser of someone whose profile says they currently work at Company X, LinkedIn knows that person is trying to leave. On a platform where their current employer's recruiters, HR department, and managers are also active. LinkedIn has created a system that exposes job seekers to their current employers.

### Plaintiff's Use of LinkedIn

23. As alleged above, Plaintiff has been a regular user of LinkedIn for more than ten years. He regularly uses Google Chrome as his Internet browser and has long had several browser extensions installed.

24. At relevant times, each time Plaintiff logged into LinkedIn while using his Chrome browser, Defendant surreptitiously executed a fingerprinting script, looking for known browser extension identifiers within Plaintiff's computer and computer systems. Plaintiff did not consent to Defendant's conduct.

---

[17] *Id.*

25.    On information and belief, Defendant engaged in the above-alleged conduct to, *inter alia*, amass a profile and build a dossier on Plaintiff so that it could use his name and likeness in advertising or selling its products to him, or soliciting purchases of products, merchandise, goods, or services by him. Indeed, Defendant uses information it collects and intercepts "to conduct research and development for [its] Services in order to" increase "growth and engagement" on its Services.[18]

## CLASS ALLEGATIONS

26.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the following Class: **all persons in the United States who logged into LinkedIn using a Chrome browser.**

27.    Plaintiff reserves the right to amend or modify the class definition with greater specificity or division and add subclass definitions after having had the opportunity to conduct discovery.

28.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations – after considering any tolling, concealment and accrual issues – and ending on the date of entry of any judgment.

29.    Excluded from the Class are: (a) Defendant; (b) any parent, affiliate or subsidiary of Defendant; (c) any entity in which Defendant has a controlling interest; (d) any officers or directors of Defendant; (e) any successor or assign of Defendant; and (f) counsel for Plaintiff and Defendant. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

30.    **Numerosity (Fed. R. Civ. P. 23(a)(1)):**  At this time, Plaintiff does not know the exact number of members of the aforementioned Class.  However, given the popularity of LinkedIn, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

---

[18] LINKEDIN, PRIVACY POLICY, https://www.linkedin.com/legal/privacy-policy?trk=linkedin-tc_auth-button_privacy-policy.

31. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

(a)    whether Defendant engaged in the wrongful conduct alleged herein;

(b)    whether the privacy rights of Plaintiff and members of the Class were violated;

(c)    whether Defendant violated the various laws cited herein;

(d)    whether Defendant scanned users' browsers for installed browser extensions; and

(e)    whether Plaintiff and members of the Class are entitled to actual, statutory, punitive and other forms of damages, as well as other monetary relief and equitable relief.

32. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of members of the Class because Plaintiff, like all members of the Class, used LinkedIn on a Chrome browser and had multiple browser extensions installed.

33. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning data privacy. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition(s) of the Class to address any steps that Defendant took.

34. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
**Violation of the California Comprehensive Computer
Data Access and Fraud Act
Cal. Penal Code § 502, *et seq.***

35. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

36. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

37. The California Comprehensive Computer Data Access and Fraud Act ("CDAFA" or the "Act") was enacted to provide protection from "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a).

38. The CDAFA affords a private right of action to owners of computers, systems, networks and programs who suffer damage or loss as a result of a violation of the Act. *See* Cal. Penal Code § 502(e)(1).

39. As relevant here, Cal. Penal Code § 502(c) imposes civil liability on anyone who:

> (c)(1) Knowingly accesses and without permission . . . uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain . . . data;

(c)(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network;

(c)(3) Knowingly and without permission uses or causes to be used computer services;

(c)(6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section; and

(c)(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

40.     Under the CDAFA, "computer services" "includes, but is not limited to, computer time, data processing, or storage functions, internet services, electronic mail services, electronic message services, or other uses of a computer, computer system, or computer network."  Cal. Penal Code § 502(b)(4).

41.     Under the CDAFA, a "computer network" is "any system that provides communications between one or more computer systems and input/output devices, including, but not limited to, display terminals, remote systems, mobile devices, and printers connected by telecommunication facilities."  Cal. Penal Code § 502(b)(2).

42.     Under the CDAFA, a "computer system" is "a device or collection of devices, including support devices . . . one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions, including, but not limited to, logic, arithmetic, data storage and retrieval, communication, and control."  Cal. Penal Code § 502(b)(5).

43.     Under the CDAFA, "data" is defined as "a representation of information, knowledge, facts, concepts, computer software, or computer programs or instructions" that "may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device."  Cal. Penal Code § 502(b)(8).

44.     As alleged herein, Defendant's conduct violates Cal. Penal Code §§ 502(c)(1), (2), (3), (6) and (7).

45. Plaintiff and Class members were the owners or lessees of the computers, computer systems, computer networks, and data described herein.

46. Defendant violated Cal. Penal Code § 502(c)(1) because it knowingly accessed, without permission, computers belonging to Plaintiff and Class members in order to wrongfully obtain data. Specifically, as alleged herein, Defendant surreptitiously, and without authorization, scanned its users' devices in order to wrongfully detect what browser extensions they had installed and to share that data with third parties.

47. Defendant violated Cal. Penal Code § 502(c)(2) because it knowingly accessed, without permission, computers belonging to Plaintiff and Class members in order to take, analyze and use data found therein. Specifically, as alleged herein, Defendant surreptitiously, and without authorization, scanned its users' devices in order to detect what browser extensions they had installed and to share that data with third parties.

48. Defendant violated Cal. Penal Code § 502(c)(3) because it knowingly, and without permission, used computer services belonging to Plaintiff and Class members. Specifically, as alleged herein, Defendant surreptitiously, and without authorization, scanned its users' devices in order to detect what browser extensions they had installed and to share that data with third parties. In doing so, Defendant used the computer time, data processing, or storage functions, internet services belonging to Plaintiff and Class members and otherwise used their computers, computer systems and/or computer networks.

49. Defendant violated Cal. Penal Code § 502(c)(6) because it knowingly, and without permission, provided third parties with a means of accessing a computer, computer system, or computer network. Specifically, as alleged herein, Defendant surreptitiously, and without authorization, scanned its users' devices in order to detect what browser extensions they had installed and to share that data with third parties. In doing so, Defendant provided those third parties with a means of accessing the data on computers belonging to Plaintiff and Class members.

50. Defendant violated Cal. Penal Code § 502(c)(7) because it knowingly, and without permission, accessed computers, computer systems, and/or computer networks belonging to

Plaintiff and Class members.  Specifically, as alleged herein, Defendant surreptitiously, and without authorization, scanned its users' devices in order to detect what browser extensions they had installed and to share that data with third parties.

51. Defendant, and the third parties that it shares data with, make use of Plaintiff's and Class members' valuable data to create dossiers on each of its users and for other business purposes.

52. This use of data belonging to Plaintiff and Class members by Defendant and third parties is wrongful and unlawful, as alleged herein.

53. Plaintiff and Class members suffered economic injury because Defendant, *inter alia*, surreptitiously, and without consent: (i) accessed and scanned Plaintiff's and Class members' computers and computer systems which contained confidential and sensitive information that they did not intend to disclose to Defendant or other unknown third parties; and (ii) obtained Plaintiff's and Class members' confidential and sensitive information without consent and without compensating Plaintiff and Class members for the fair value of the information.

54. Moreover, Defendant profited by appropriating Plaintiff's and Class members' valuable data without sharing those profits with Plaintiff and Class members. It would not be equitable to allow Defendant to keep those profits, which were generated by its violations of Plaintiff and Class members' privacy interests.

55. As a direct and proximate result of Defendant's unlawful conduct within the meaning of Cal. Penal Code § 502, Defendant has caused losses to Plaintiff and Class members in an amount to be proven at trial.

56. Plaintiff, on behalf of himself and the Class, seeks compensatory damages and/or disgorgement in an amount to be proven at trial, and declaratory, injunctive, or other equitable relief.

57. Plaintiff and members of the Class are entitled to punitive damages because Defendant's violations were willful, and, upon information and belief, Defendant is guilty of oppression, fraud, or malice within the meaning of Cal. Civil Code § 3294 such that Plaintiff and

Class Members are entitled to recovery of exemplary damages under Cal. Penal Code § 502(e)(4).

58.    Plaintiff and Class Members are also entitled to recover reasonable attorneys' fees pursuant to Cal. Penal Code § 502(e).

<strong><u>COUNT II</u></strong><br><strong>Invasion of Privacy under California's Constitution</strong>

59.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.    Plaintiff brings this claim against Defendant individually and on behalf of the Class.

61.    To plead an invasion of privacy claim, Plaintiff must show an invasion of: (i) a legally protected privacy interest; (ii) where Plaintiff had a reasonable expectation of privacy in the circumstances; and (iii) conduct by Defendant constituting a serious invasion of privacy.

62.    Defendant has intruded upon the following legally-protected privacy interests of Plaintiff and Class members: (i) privacy interests protected by the CDAFA; (ii) the California Constitution, which guarantees Californians the right to privacy; (iii) Cal. Penal Code § 484(a), which prohibits the knowing theft or defrauding of property "by any false or fraudulent representation or pretense"; (iv) the right to be free from unwanted and unknowing intrusions upon their seclusion; and (v) Cal. Civil Code § 3344, which prohibits the knowing use of another's name or likeness, in any manner, for purposes of, *inter alia*, advertising, selling or soliciting.

63.    Plaintiff and Class members had a reasonable expectation of privacy under the circumstances here because they did not consent to Defendant or third parties working with Defendant accessing and scanning their computers and computer systems which contained confidential and sensitive information that they did not intend to disclose to Defendant or other unknown third parties.

64.    Moreover, Plaintiff and Class members had an objectively reasonable expectation of privacy because, unlike other forms of tracking, Defendant does not disclose in its Privacy Policy or elsewhere that it tracks users' browser extensions or that it discloses data about those extensions to third parties.

65.    Such information is "personal information" under California law, which defines personal information as including "Internet or other electronic network activity information," such

as "browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement."  Cal. Civ. Code § 1798.140.

66.     Defendant, in violation of Plaintiff's and other Class members' reasonable expectation of privacy, surreptitiously, and without authorization, scanned its users' devices in order to detect what browser extensions they had installed and then shared that data with third parties.  This data included sensitive information, including information about users' religious and political affiliations and beliefs, and personal health information.

67.     Defendant's actions constituted a serious invasion of privacy and constitute an egregious breach of social norms that is highly offensive.

68.     Defendant lacked a legitimate business interest in tracking its users' browser extensions and then sharing that data with third parties.

69.     Plaintiff and Class members have been damaged and injured by Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

70.     Plaintiff and Class members seek appropriate relief for that injury, including but not limited to: (i) damages that will compensate them for the harm to their privacy interests as well as disgorgement of profits made by Defendant as a result of its intrusions upon Plaintiff's and Class members' privacy; and (ii) injunctive and other appropriate equitable relief.

71.     Plaintiff and Class members seek punitive damages because Defendant's actions— which were malicious, oppressive, willful—were calculated to injure Plaintiff and Class members and made in conscious disregard of Plaintiff's and Class members' rights.  Punitive damages are warranted to deter Defendant from engaging in future misconduct.

## COUNT III
### Intrusion Upon Seclusion

72.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73.     Plaintiff brings this claim against Defendant individually and on behalf of the Class.

74.     To assert a claim for intrusion upon seclusion, Plaintiff must plead: (i) Defendant intentionally intruded into a place, conversation, or matter as to which Plaintiff had a reasonable expectation of privacy; and (ii) the intrusion was highly offensive to a reasonable person.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                15

75. Here, by surreptitiously, and without authorization, tracking its users' devices in order to detect what browser extensions they had installed, and then sharing that data with third parties, Defendant intentionally intruded upon the solitude or seclusion of LinkedIn users.

76. Plaintiff and Class members had a reasonable expectation of privacy under the circumstances here because they did not consent to Defendant or third parties working with Defendant accessing and scanning their computers and computer systems which contained confidential and sensitive information that they did not intend to disclose to Defendant or other unknown third parties.

77. Moreover, Plaintiff and Class members had an objectively reasonable expectation of privacy because, unlike other forms of tracking, Defendant does not disclose in its Privacy Policy or elsewhere that it tracks users' browser extensions or that it discloses data about those extensions to third parties.

78. Defendant's intentional intrusion into Plaintiff's and Class members' browser extensions would thus be highly offensive to a reasonable person.

79. As described above, this intrusion was intentional as it was part of a larger tracking operation that Defendant purposefully executed.

80. Plaintiff and Class members have been damaged by Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

81. Plaintiff and Class members seeks appropriate relief for that injury, including but not limited to: (i) damages that will compensate them for the harm to their privacy interests as well as disgorgement of profits made by Defendant as a result of its intrusions upon Plaintiff's and Class members' privacy; and (ii) injunctive and other appropriate equitable relief.

82. Plaintiff and Class members seek punitive damages because Defendant's actions— which were malicious, oppressive, willful—were calculated to injure Plaintiff and Class members and made in conscious disregard of Plaintiff's and Class members' rights. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

**COUNT IV**
**Violation of California's Right of Publicity Law**
**Cal. Civ. Code § 3344**

83. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

84. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

85. Cal. Civ. Code § 3344(a) prohibits a person from knowingly using "another's name . . . or likeness, in any manner, . . . for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods, or services, without that person's prior consent . . . ."

86. A person who violates Cal. Civ. Code § 3344(a) is liable to the injured party or parties in "an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by them as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." An injured party is also entitled to punitive damages, injunctive relief, as well as their attorney's fees and costs.

87. As alleged herein, Defendant violated Cal. Civ. Code § 3344 because Defendant used the names and likenesses of Plaintiff and Class members for purposes of advertising or selling, or soliciting purchases of Defendant's products, merchandise, goods and/or services, without the consent of Plaintiff or Class members. Specifically, Defendant scanned the computers and computer systems of Plaintiff and Class members for information about their browser extensions in order to amass profiles and build dossiers and Plaintiff and Class members that Defendant then used to advertise its products to Plaintiff and Class members and solicit the purchase of its products, merchandise, goods, and/or services. Plaintiff and Class members did not consent to the above-described use of their names and likeness.

88. As a result of Defendant's violation of Cal. Civ. Code § 3344, Plaintiff and Class members are entitled to: (i) damages in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by them as a result of Defendant's unauthorized use of their names and likenesses; and (ii) any profits from Defendant's unauthorized use of their names and likenesses that are attributable to the use and are not taken into account in computing the actual damages.  Plaintiff and Class members are also entitled to punitive damages, injunctive

relief, as well as their attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a)     Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     Declaring that Defendant's conduct violates the statutes referenced herein;

(c)     Finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     Awarding Plaintiff and Class members statutory, compensatory, punitive, exemplary, consequential, general and any other type of permissible damages in amounts to be determined at trial;

(e)     Granting permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts and practices alleged herein;

(f)     Awarding prejudgment and post-judgment interest on all amounts awarded; and

(g)     Awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: April 6, 2026                    **DRURY LEGAL, LLC**

By: _/s/ Scott R. Drury_
        Scott R. Drury

Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

**ARISOHN LLC**
Joshua D. Arisohn (to be admitted *pro hac vice*)

513 Eighth Avenue, #2
Brooklyn, NY 11215
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

*Attorneys for Plaintiff*