**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

**ARISOHN LLC**
Joshua D. Arisohn (admitted *pro hac vice*)
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

**KINGFISHER LAW APC**
Nithin Kumar
P.O. Box 492415
Los Angeles, CA 90049-9998
Telephone: (408) 930-3580
Email: nithin@kingfisherlawapc.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS FARRELL, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No.: 3:26-cv-02953-VC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS**<br><br>Date: September 3, 2026<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 3 – 17th Floor<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Plaintiff Farrell Has Article III Standing. ........ 2

- A. Legal Standards. ........ 2
- B. Plaintiff Farrell's Injury Is Akin to a Trespass. ........ 3
- C. Defendant's Factual Challenge to Standing Based on Its Intrusion Upon Seclusion Must Be Decided by a Trier of Fact. ........ 4
- D. Defendant's Facial Challenge to Standing Similarly Fails. ........ 6

II. Defendant Does Not Establish Consent. ........ 8

III. Plaintiff Farrell Plausibly Alleges Defendant Collected His Browser Extension Data. ........ 12

IV. Plaintiff Farrell Adequately Alleges a Claim for Invasion of Privacy and Intrusion Upon Seclusion. ........ 12

V. Plaintiff Farrell Sufficiently Pleads a CDAFA Claim. ........ 14

VI. Plaintiff Farrell Sufficiently Pleads a Right of Publicity Claim. ........ 16

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

## CASES

*Athletics Investment Grp., LLC v. Schnitzer Steel Indust., Inc.*, 2025 WL 2696428 (N.D. Cal. Sept. 22, 2025) ... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ... 16

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) ... 2, 5-6

*Briskin v. Shopify Inc.*, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ... 15-16

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 10

*Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560 (9th Cir. 2018) ... 4

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 8-10

*Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) ... 11

*D.B. v. Bellesa Enters. US, Inc. Additional Party Names: B.S.*, 2026 WL 2058427 (C.D. Cal. July 14, 2026) ... 12

*Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) ... 7

*E.M. v. Cal. Dep't of Ed.*, 2025 WL 1883826 (N.D. Cal. July 8, 2025). ... 16

*eBay, Inc. v. Bidders Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ... 4

*Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063 (N.D. Cal. 2012) ... 8

*Esparza v. Kohl's, Inc.*, 732 F. Supp. 3d 934 (S.D. Cal. 2024) ... 7

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ... 9

*In re Capacitors Antitrust Litig.*,
2017 WL 897340 (N.D. Cal. Mar. 7, 2017) ... 9

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) ... 6, 13-15

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ... 8, 11

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ... 10-11

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ... 13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ... 11

*In re Tracht Gut, LLC*,
836 F.3d 1146 (9th Cir. 2016) ... 17

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ... 10

*Lineberry v. AddShopper Inc.*,
2025 WL 551864 (N.D. Cal. Feb. 19, 2025). ... 7, 14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ... 16

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ... 8

*Risher v. Adecco Inc.*,
2020 WL 13505422 (N.D. Cal. Feb. 14, 2020) ... 8

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ... 16

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ... 18

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) ... 17

*Ryabyshchuk v. Citibank (S. Dakota) N.A.*,
2011 WL 5976239 (S.D. Cal. Nov. 28, 2011) ... 8

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ... 15

*Smith v. Red Rock Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ... 13

*TransUnion LLC v. Rodriguez*,
594 U.S. 413 (2021) ... 2

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ... 15

*U.S. ex rel. Air Control Technologies, Inc. v. Pre Con Industries, Inc.*,
720 F.3d 1174 (9th Cir. 2013) ... 8

**STATUTES**

Cal. Civ. Code § 1798.140 ... 5, 13

Cal. Civ. Code § 3344(a) ... 17

Cal. Penal Code § 502, *et seq.* ... 1, 14-15

California's Right of Publicity Law, Cal. Civ. Code § 3344 ... 1

**RULES**

Fed. R. Civ. P. 12 ... 16

Fed. R. Civ. P. 8 ... 16

# INTRODUCTION

This case arises out of Defendant LinkedIn Corporation's ("Defendant") scanning of users' devices "for data about their installed browser extensions without their consent or knowledge." ECF No. 1 (Compl.) ¶ 3. As alleged, in executing its scheme, Defendant "scans users' computers for thousands of different browser extensions by name." *Id.* ¶ 12. A browser extension is a "small software module that can be added onto a web browser for enhanced functionality" and can "often reveal sensitive and private information about its users," including users' political opinions, religious beliefs, disabilities and employment status. *Id.* ¶ 13. After Defendant collects the browser extension information, it transmits that data to its own servers and third parties. *Id.* ¶ 17.

On April 6, 2026, Plaintiff Nicholas Farrell filed a four-count class action complaint alleging: (a) violations of the California Comprehensive Computer and Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, *et seq.*; (b) invasion of privacy under California's Constitution; (c) intrusion upon seclusion; and (d) violations of California's Right of Publicity Law, Cal. Civ. Code § 3344. In its scattershot motion to dismiss (ECF No. 39) ("MTD"), Defendant seeks dismissal of the Complaint in its entirety. According to Defendant, Plaintiff Farrell: (a) lacks Article III standing; (b) consented to Defendant's scheme; (c) fails to plausibly allege Defendant collected his browser extension data; and (d) fails to sufficiently allege any of his claims. The motion lacks merit, and the Court should deny it in its entirety.

With respect to Article III standing, Plaintiff Farrell has suffered a cognizable trespass injury based on Defendant's interference with his possessory interest in his computer. Moreover, Defendant's factual and facial challenges to Plaintiff Farrell's privacy injury allegations fail. From a factual perspective, Defendant's submitted evidence does not resolve whether Plaintiff Farrell had a reasonable expectation of privacy, and a trier of fact must resolve the issue. Facially, Plaintiff Farrell has alleged a cognizable privacy injury based upon Defendant's intrusion upon seclusion.

Defendant's consent argument fails because Defendant does not meet its burden of establishing that Plaintiff Farrell consented to the browser-extension scanning scheme at issue. Because consent is an affirmative defense, Defendant carries that burden. Moreover, issues of consent are best resolved at later stages of the litigation.

Defendant's contention that Plaintiff Farrell does not plausibly allege the collection of his browser extension data is bizarre. In its motion, Defendant admits to the collection of the data at issue. *See* MTD at 20.[1]

Finally, Defendant's contention that Plaintiff Farrell has not sufficiently pled any of his claims fails to take his allegations as true or to view his allegations and the reasonable inferences therefrom in the light most favorable to Plaintiff Farrell. When properly viewed, Plaintiff Farrell's allegations and the reasonable inferences therefrom establish that Plaintiff Farrell has properly stated each of his claims.

## ARGUMENT

### I. Plaintiff Farrell Has Article III Standing.

Defendant makes a factual and facial challenge to Plaintiff Farrell's Article III standing on the grounds that he did not suffer an invasion of privacy or economic harm. MTD at 13. Defendant ignores that Plaintiff Farrell suffered a trespass. Moreover, contrary to Defendant's contention, Plaintiff Farrell also suffered an invasion of privacy.[2]

#### A. Legal Standards.

To establish Article III standing, a plaintiff must show: (a) he has suffered a concrete, particularized and actual or imminent injury in fact; (b) the defendant likely caused the injury; and (c) judicial relief would likely redress the injury. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024). In determining whether a plaintiff has suffered a concrete harm, a court should inquire into whether the plaintiff "has identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Rodriguez*, 594 U.S. 413, 424 (2021). Traditional tangible harms qualify as concrete injuries under Article III. *Id.* at 425. Further, various intangible harms, such as disclosure of private information and instruction upon seclusion, also qualify as concrete injuries. *Id.*

[1] Citations to page numbers of docketed entries are to the CM/ECF-stamped page numbers.
[2] Defendant also contends Plaintiff Farrell did not suffer an economic injury. MTD at 14-15. Because Plaintiff Farrell has Article III standing based on Defendant's trespass and invasion of privacy, he does not address Defendant's economic injury argument, which would require the submission of extrinsic evidence. Plaintiff Farrell contests the contention he did not suffer an economic injury and reserves all rights to fully pursue the economic injuries he suffered.

A defendant may make a factual or facial attack on jurisdiction. *See Bowen*, 118 F.4th at 1142, n.6. A factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* (internal quotation marks omitted). By contrast, a facial attack "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (cleaned up).

With respect to a factual challenge, after a defendant has contested the truth of the plaintiff's factual allegations, the burden shifts to the plaintiff to support their factual allegations with competent proof. *Id.* at 1142. When "jurisdictional issues are intertwined with an element of the merits of the plaintiff's claim, the court must treat the motion like a motion for summary judgment and leave the resolution of material factual disputes to the trier of fact." *Id.* at 1143 (internal quotation marks omitted). Thus, a threshold question is whether the plaintiff's allegations related to standing can be separated from the merits of the case. *See id.* If the issue of standing is intertwined with an element of the merits of a claim asserted by the plaintiff, the court must leave the resolution of a material factual dispute to the trier of fact. *See id.* at 1144.

**B. Plaintiff Farrell's Injury Is Akin to a Trespass.**

Plaintiff Farrell alleges that Defendant violated the CDAFA by, *inter alia*: (a) "knowingly access[ing], without permission, computers belonging to Plaintiff and Class members in order to wrongfully obtain data"; (b) "knowingly access[ing], without permission, computers belonging to Plaintiff and Class members in order to take, analyze and use data found therein"; and (c) "knowingly, and without permission, access[ing] computers, computer systems, and/or computer networks belonging to Plaintiff and Class members." Compl. ¶¶ 46-47, 50. The common-law analogue to Plaintiff's CDAFA claim is trespass.

"Trespass is a type of injury that has been litigated for centuries and is cognizable as an injury even in the absence of any consequential damages." *Athletics Investment Grp., LLC v. Schnitzer Steel Indust., Inc.*, 2025 WL 2696428, at *3 (N.D. Cal. Sept. 22, 2025) (cleaned up and citing cases) (internal quotations marks and citations omitted). "In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant

intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc. v. Bidders Edge, Inc.*, 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000).

As discussed above, Plaintiff alleges a cognizable trespass injury, namely that Defendant intentionally and without authorization interfered with his possessory interest in his computer by surreptitiously accessing his computer to obtain, take, analyze and use his data. Regardless of whether that injury resulted in consequential damages, the trespass itself is sufficient to confer Article III jurisdiction. *See Athletics Investment Grp., LLC*, 2025 WL 2696428, at *3. Notably, Defendant does not challenge Plaintiff's trespass injury (*see* MTD at 13-16) and has, therefore, waived any such challenge in connection with its motion. *See Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 570 (9th Cir. 2018) (inadequately briefed arguments are waived).

### C. Defendant's Factual Challenge to Standing Based on Its Intrusion Upon Seclusion Must Be Decided by a Trier of Fact.

Defendant's factual and facial challenges to Plaintiff Farrell's privacy injury fail. As a threshold matter, intrusion upon seclusion is an intangible harm that can be concrete. *TransUnion*, 594 U.S. at 425.

While Defendant attempts to factually challenge Plaintiff Farrell's privacy injury resulting from its intrusion upon seclusion (MTD at 13-14), the attempt fails. Defendant's evidence does not resolve the issue of whether Plaintiff Farrell had a reasonable expectation of privacy in the browser extensions that he used.

Plaintiff Farrell alleges that when "users visit LinkedIn, Defendant executes hidden scripts that scan their browsers for installed extensions and it then transmits that data to third parties without users' consent or knowledge." Compl. 1 ¶ 11. Plaintiff Farrell further alleges that the browser extensions for which Defendant scans "often reveal sensitive private information about its users." *Id.* ¶ 13. Plaintiff Farrell alleges that he had "an objectively reasonable expectation of privacy because: (a) he "did not consent to Defendant or third parties working with Defendant accessing and scanning [his] computers and computer systems which contained confidential and sensitive information that [he] did not intend to disclose to Defendant or other unknown third

parties"; and (b) "unlike other forms of tracking, Defendant does not disclose in its Privacy Policy or elsewhere that it tracks users' browser extensions or that it discloses data about those extensions to third parties." *Id.* ¶¶ 63-64. As Plaintiff Farrell alleges, under California law, the information scanned for and collected by Defendant constitutes "personal information," which includes "Internet or other electronic network activity information," such as "browsing history . . . and information regarding a consumer's interaction with an internet website, application, or advertisement." *See Id.* ¶ 65 (citing Cal. Civ. Code § 1798.140). Finally, Plaintiff Farrell alleges that Defendant's conduct violated his reasonable expectation of privacy because Defendant "surreptitiously, and without authorization, scanned its users' devices in order to detect what browser extensions they had installed and then shared that data with third parties. This data included sensitive information including information about users' religious and political affiliations and beliefs, and personal health information." *Id.* ¶ 66.

Defendant attempts to rebut Plaintiff Farrell's allegations via the Declaration of Tyler Seymour (*see* MTD at 14) but fails to do so. As discussed further below, Seymour's declaration does not resolve the question of whether Defendant intruded upon Plaintiff's seclusion. Under these circumstances, the Court need not look to countervailing evidence to reject Defendant's standing challenge. *See Bowen*, 118 F.4th at 1147 ("Even without considering [the plaintiff's] countervailing evidence, [the defendant's] documents do not resolve the question of whether" the defendant made actionable misrepresentations).

Seymour's declaration generically describes how Defendant's "browser extension-detection system" works. *See* ECF No. 39-1 (Decl. of Tyler Seymour) ¶¶ 11-15. According to Seymour, web-extension developers can choose to expose files located within a browser extension to the web. *Id.* ¶¶ 12-13. These files are known as web-accessible resources. *Id.* ¶ 12. Seymour states that "when a website detects whether a member has a particular extension installed—by checking for the presence of a web-accessible resource—it is simply observing information that the extension developer has, by architectural choice, made publicly accessible to any website the member visits." *Id.* ¶ 14.

Seymour does not state whether any browser-extension developer made Plaintiff Farrell aware of the purportedly public nature of browser extensions or whether Plaintiff Farrell agreed to the disclosure of the browser extensions he utilized. Indeed, Seymour provides no specific information regarding any browser extension, including what notices were provided to users when they download the extensions. While Seymour contends that Defendant uses browser extension detection results "to engage in the security purposes disclosed in its Privacy Policy," as discussed in more detail in Plaintiff Farrell's discussion of consent below (*see infra* § II), the referenced Privacy Policy does not mention the browser-extension scanning at issue, and Defendant provides no evidence that Plaintiff agreed to the terms of the referenced policy. *See, generally,* MTD and Seymour Decl.

Based on the above, Seymour's declaration does not resolve the question of whether Plaintiff Farrell had a reasonable expectation of privacy in his browser extensions. The declaration does not state or otherwise show that Plaintiff Farrell did not have a reasonable expectation of privacy with respect to his use of browser extensions, both generally and while using LinkedIn. At best, the declaration highlights questions of fact regarding Plaintiff Farrell's reasonable expectation of privacy. Because Plaintiff Farrell's reasonable expectation of privacy is an element of his claims for intrusion upon seclusion claim and invasion of privacy claim under California's Constitution, *see In re Facebook, Inc. Internet Tracking Litigation* ("*Facebook Tracking*"), 956 F.3d 589, 601 (9th Cir. 2020), a trier of fact must resolve the issue. *See Bowen*, 118 F.4th at 1143; *see also Facebook Tracking*, 956 F.3d at 601-02 (whether one has a reasonable expectation of privacy is a mixed question of law and fact, informed by "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms."); § IV, *infra* (discussing Plaintiff Farrell's reasonable expectation of privacy).

**D. Defendant's Facial Challenge to Standing Similarly Fails.**

According to Defendant, absent its factual challenge, Plaintiff Farrell lacks Article III standing because he does not allege "a concrete, particularized privacy injury that [he] suffered."[3]

[3] As discussed above, Defendant ignores its trespass.

*See* MTD at 15. In making the argument, Defendant improperly fails to take Plaintiff Farrell's allegations as true. *See Bowen*, 118 F.4th at 1142, n.6. When Plaintiff Farrell's allegations are properly viewed, his Complaint sufficiently alleges a cognizable privacy injury.

Plaintiff Farrell alleges that he has long had several browser extensions installed in his Google Chrome browser. Compl. 1 ¶ 23. Further, as discussed above, Plaintiff Farrell alleges the types of information that may be obtained via browser extensions, including religious affiliation, political opinions, health and disability information and employment status. *See id.* ¶ 22. The unlawful acquisition of this type of information can constitute an invasion of privacy. *See, e.g.*, *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) (denying motion to dismiss based on alleged tracking of healthcare information).

Defendant cites to *Esparza v. Kohl's, Inc.*, 732 F. Supp. 3d 934 (S.D. Cal. 2024) (MTD at 15), for the proposition that generally alleging that software captures personal details, browsing history and IP addresses is insufficient to support an invasion of privacy claim. *See id.* But that is not what Plaintiff Farrell alleges. Moreover, "[w]hether browsing activity is private or personal enough [to confer Article III standing] depends on the facts of each case, including how much information is captured and how it is aggregated or used." *Lineberry v. AddShopper Inc.*, 2025 WL 551864, at *1 (N.D. Cal. Feb. 19, 2025).

Defendant also contends Plaintiff Farrell does not allege the collection of his data. *Id.* Again, that ignores Plaintiff Farrell's allegations. Plaintiff Farrell expressly alleges that each time he logged into LinkedIn, Defendant "surreptitiously executed a fingerprinting script, looking for known browser extension identifiers within Plaintiff's computer and computer system." Compl. 1 ¶ 24. Plaintiff Farrell further alleges that Defendant scanned users' devices to detect the browser extensions they had installed and then shared that data with third parties. *Id.* ¶ 66. Contrary to Defendant's contention, Plaintiff Farrell's allegations establish the collection of his data and sets forth a cognizable privacy injury.

**II. Defendant Does Not Establish Consent.**

Defendant argues that, through its User Agreement, including its Privacy Policy and Cookie Policy, Plaintiff Farrell consented to its collection of browser extension data and its disclosure of that data to third parties. *See* MTD at 17-19. That is incorrect. Defendant does not meet its burden of establishing that Plaintiff Farrell agreed to any of its terms, let alone the current updated version of those terms. But even if Plaintiff Farrell did agree, Defendant's policies do not establish that he consented to the conduct at issue in this case.

"[C]onsent is an affirmative defense for which defendant bears the burden of proof." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (internal quotations and citation omitted). As such, it is not properly raised in a motion to dismiss. *Risher v. Adecco Inc.*, 2020 WL 13505422, at *3 (N.D. Cal. Feb. 14, 2020) ("[I]t is not incumbent on plaintiff to plead facts refuting any possible affirmative defense, and resolution of the scope of any consent must await development of the record."); *Ryabyshchuk v. Citibank (S. Dakota) N.A.*, 2011 WL 5976239, at *5 (S.D. Cal. Nov. 28, 2011) ("[A] motion for summary judgment—rather than a motion to dismiss—is the proper place for the creditor to establish that the consumer's claim fails due to the presence of prior express consent."); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) ("An affirmative defense may not ordinarily be raised on a motion to dismiss.").

Instead, "an affirmative defense . . . must be raised at summary judgment . . . ." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 790 (N.D. Cal. 2019) (citing *U.S. ex rel. Air Control Technologies, Inc. v. Pre Con Industries, Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013)). "The only exception is when it is absolutely clear from the allegations in the complaint and judicially noticeable material that" the defense succeeds. *Id.*; *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) ("An affirmative defense may be considered [on a motion to dismiss] if the defense is based on undisputed facts or if the basis for the argument appears on the face of the complaint and any materials the court takes judicial notice of.").

Here, Defendant does not establish its consent defense with undisputed facts or judicially noticeable documents. Plaintiff Farrell expressly alleges he "did not consent to Defendant's

conduct." Compl. ¶ 24. He adds that "Defendant has not disclosed this practice in its Privacy Policy. There is no mention of extension scanning in any public-facing document of Defendant." *Id.* ¶ 19 (internal quotation marks omitted).

Defendant responds by pointing to its November 3, 2025 Privacy Policy (MTD at 17-18), but it provides no evidence demonstrating that Plaintiff Farrell agreed to any policy, let alone that particular version. Instead, Defendant states without any factual support that "[w]hen any web user (visitor or signed-in member) uses LinkedIn, they agree to LinkedIn's User Agreement." MTD at 10, 17. That is not enough. Defendant provides no record evidence showing that Plaintiff Farrell agreed to any terms even though such information, if it exists, would be in its possession. Likewise, while Defendant submits the declaration of LinkedIn employee Tyler Seymour, he says nothing about whether Plaintiff Farrell agreed to any terms or even what users would be required to agree to in the normal course. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 922 (N.D. Cal. 2024) (considering evidence that plaintiff agreed to the terms through a sign-in screen to determine whether the defendant provided reasonably conspicuous notice of its terms and if the plaintiff unambiguously manifested assent).

Even if Defendant established that Plaintiff Farrell agreed to Defendant's terms ten or more years ago when he originally created his LinkedIn account (*see* Compl. ¶ 23), it does no work at all to demonstrate that he would be bound by an updated policy issued in 2025. "Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract." *Id.* In the context of updated terms for a website like Defendant's, that notice is usually provided through an email notice. Here, where Defendant provides no evidence whatsoever that Plaintiff Farrell ever received an email (or any other form of notice) about LinkedIn's updated November 3, 2025 Privacy Policy, it has not met its burden of demonstrating that he received actual or constructive notice of the updated terms or provided assent thereto. Defendant may not attempt to sandbag Plaintiff by providing this type of information in its reply. *See In re Capacitors Antitrust Litig.*, 2017 WL 897340, at *1 (N.D. Cal. Mar. 7, 2017) (raising new argument in reply is a classic form of sandbagging). Accordingly,

Defendant cannot rely on the November 3, 2025 Privacy Policy to establish its affirmative defense of consent. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023) ("[T]here is no evidence that the email allegedly sent to drivers adequately notified drivers of the update [to the terms]. The district court did not have the email, so it could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice.").

Even if Defendant did show that Plaintiff Farrell agreed to the November 3, 2025 Privacy Policy, the terms of that document do not establish he consented to Defendant's indiscriminate scraping and sharing of his browser extension data. "Consent to an interception can be explicit or implied, but any consent must be actual." *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). "In order for consent to be actual, the disclosures must explicitly notify users of the practice at issue." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) (internal quotation marks omitted). Moreover, "consent is not an all-or-nothing proposition," *see Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 623 (N.D. Cal. 2021) (internal quotation marks omitted), and so "a reviewing court must inquire into the dimensions of the consent and then ascertain whether the interceptions exceeded those boundaries." *See Brown*, 525 F. Supp. 3d at 1067 (internal quotation marks omitted). "The disclosures must have only one plausible interpretation for a finding of consent." *Calhoun*, 526 F. Supp. 3d at 620.

Here, the November 3, 2025 Privacy Policy states in relevant part that "[w]hen you visit . . . our Services . . . we . . . get information about your . . . device (e.g., web browser and add-ons . . . .). ECF No. 40-4 (Peelish Decl.), Ex. 3 at 5. But "add-ons" is a term typically associated with Mozilla's Firefox browser. *See* Mozilla, Firefox Browser Add-Ons, *available at*: [https://addons.mozilla.org/en-US/firefox/](https://addons.mozilla.org/en-US/firefox/) (last checked July 28, 2026). Chrome, on the other hand, does not use the term "add-ons" and instead refers to "extensions." Chrome Web Store, Extensions, *available at*: [https://chromewebstore.google.com/category/extensions](https://chromewebstore.google.com/category/extensions) (last checked July 28, 2026). Accordingly, a disclosure about "add-ons" does not explicitly notify users that LinkedIn would be scraping data about their Chrome browser extensions. This failure to define and clarify terms alone dooms Defendant's argument. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F.

Supp. 3d 767, 789-90 (N.D. Cal. 2019) ("[I]f a reasonable . . . user could plausibly have interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct . . . based on the issue of consent.").

Defendant's disclosure about "add-ons" also fails to explicitly notify users about the kind of indiscriminate data collection LinkedIn undertook. It does not state, for instance, that Defendant would scan users' devices for extensions by name in a manner that would disclose their political opinions, religious beliefs, disability and neurodivergence status, employment status and trade secrets. Compl. ¶ 13. Simply referencing access to information about add-ons is not specific enough. *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847-48 (N.D. Cal. 2014) (for a finding of consent, the disclosures must have given users notice of the "specific practice" at issue); *In re Google Inc.*, 2013 WL 5423918, at *13 (Google's "policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793-94 (N.D. Cal. 2022) (a reasonable user would not have understood from Meta's generalized notice that Meta was collecting protected health information.).

Defendant also relies on the following provision in the November 3, 2025 Privacy Policy to excuse its sharing of extension data with third parties:

> We use others to help us provide our Services (e.g., maintenance, analysis, audit, payments, fraud detection, customer support, marketing and development). They will have access to your information (e.g., the contents of a customer support request) as reasonably necessary to perform these tasks on our behalf and are obligated not to disclose or use it for other purposes.

ECF No. 40-4 (Peelish Decl.), Ex. 3 at 11. Here, too, this language does not explicitly notify users that their browser extension data, along with their related sensitive information, would be passed along to third parties HUMAN and Google. This provision does not mention extensions or add-ons at all, or name the third parties that would receive the data. And there would be no reason for a consumer to believe that third parties would need browser extension information for purposes of fraud detection. Accordingly, Defendant's vague language cannot constitute consent. *See D.B. v.*

*Bellesa Enters. US, Inc. Additional Party Names: B.S.*, 2026 WL 2058427, at *14 (C.D. Cal. July 14, 2026) (where "the general theme of the Privacy Policy is that personal information will not be redistributed, unless certain narrow exceptions are satisfied," the policy "failed 'explicitly [to] notify' Plaintiffs of the challenged data collection and disclosure practices.").

**III. Plaintiff Farrell Plausibly Alleges Defendant Collected His Browser Extension Data.**

Defendant argues that Plaintiff Farrell fails to plausibly allege it "unlawfully collected browser extension data." MTD at 20. Defendant's argument is puzzling in light of the fact that it *admits* to the data collection at issue. *Id.* at 7 ("LinkedIn deploys multi-layered security systems, including browser-extension (or 'add-on') detection systems . . . ."); *id.* at 9 ("LinkedIn detects information that browser extensions openly provide to all websites in order to interact with them."); ECF No. 39-1 (Seymour Decl.) ¶ 10 (describing the "purpose of LinkedIn's browser extension-detection systems").

Regardless, the Complaint sets out in detail the nature of that data collection. Specifically, "[e]ach time a user loads a LinkedIn page on a Chrome browser, a fingerprinting script executes silently, looking for known browser extension identifiers." Compl. ¶ 14. "If a file loads, the extension is confirmed present." *Id.* "If not, it isn't." *Id.* "The entire scan takes milliseconds, and the user sees absolutely nothing." *Id.* Plaintiff Farrell then provides a data flow summary showing specific scripts that run during this process. *Id.* That Plaintiff Farrell quotes from and cites to the BrowserGate Report is of no moment; allegations in complaints routinely cite to and quote from publicly-reported information.

**IV. Plaintiff Farrell Adequately Alleges a Claim for Invasion of Privacy and Intrusion Upon Seclusion.**

Defendant argues that Plaintiff Farrell's invasion of privacy and intrusion upon seclusion claims fail because he does not plausibly allege he had a reasonable expectation of privacy in the data collected or that the intrusion was highly offensive. MTD at 22. That is incorrect. California law expressly creates a privacy interest in computer data like that at issue, and Defendant's collection and distribution of that sensitive data is highly offensive.

"To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Facebook Tracking*, 956 F.3d at 601 (cleaned up). "A claim for invasion of privacy under the California Constitution involves similar elements." *Id.* "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious as to constitute an egregious breach of the social norms such that the breach is highly offensive." *Id.* (cleaned up). For both claims, whether one has a reasonable expectation of privacy is a mixed question of law and fact, informed by "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook Tracking*, 956 F.3d at 601-02. "To make this determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.*

Here, Plaintiff Farrell had an expectation of privacy in his browser extension data because, as he alleges, California law defines "personal information" as including "Internet or other electronic network activity information," such as "browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement." Cal. Civ. Code § 1798.140; *see also* Compl. ¶ 65. Data about installed browser extensions fall within this broad category. *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (citing Cal. Civ. Code § 1798.140 and holding that "device information" constitutes "personal information under California law and parties generally maintain a reasonable expectation [of privacy] in their personal information"). In addition, as explained *supra*, Defendant's privacy policy did not explicitly disclose that it would collect browser extension data or share that data with third parties. *Smith v. Red Rock Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (finding a reasonable expectation of privacy where the privacy policy said nothing specifically about third parties collecting, storing, and analyzing a visitor's browsing and purchase history).

This invasion of privacy was also highly offensive. The "ultimate question of whether . . . tracking and collection practices could highly offend a reasonable individual is an issue that [often] cannot be resolved at the pleading stage." *Facebook Tracking*, 956 F.3d at 606. Regardless, here, Defendant's tracking meets this standard. As Plaintiff Farrell alleges in the Complaint, Defendant decided to track only specific extensions, including those that reveal sensitive personal information about its users' "religious and political affiliations and beliefs, and personal health information." Compl. ¶ 66; *see also id.* ¶ 13. And, because "LinkedIn accounts are tied to real names, employers, and job titles" (*id.* ¶ 21), it can link that data to actual individuals:

> Users register with their real names. Many are verified with photo ID . . . . This means LinkedIn does not just know that someone has a religious browser extension installed. It knows that person's name, employer, job title, department, location, and professional network. And it knows the same about every one of their colleagues who also uses LinkedIn. That is not a privacy breach. That is an intelligence operation.

*Id.* This intrusion onto some of the most sensitive information that individuals possess is highly offensive.

## V. Plaintiff Farrell Sufficiently Pleads a CDAFA Claim.

Defendant seeks dismissal of Plaintiff Farrell's CDAFA claim on the grounds that Plaintiff Farrell fails to plead he suffered damage or economic loss and, therefore, lacks statutory standing. MTD at 24; *see also id.* at 25 (restating theory as failure to plead economic loss). Defendant's argument lacks merit.

In relevant part, the CDAFA provides that "the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." Cal. Penal Code § 502(e)(1). The CDAFA "does not define 'damage or loss' and the plain reading of 'damage or loss by reason of a violation' of CDAFA is that any loss due to the CDAFA is cognizable." *Lineberry*, 2025 WL 551864, at *2. A plaintiff "may allege damage or loss from the misappropriation of their data, so long as they articulate that theory of loss in a concrete way." *Id.*

Disgorgement is a remedy contemplated by the CDAFA. *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025). In *Smith*, the court held that, in the context of the CDAFA, "'California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable.'" *Id.* (quoting *Facebook Tracking*, 956 F.3d at 600). "Plaintiffs have a 'stake in the profits garnered' unjustly from their data, and '[u]nder California law, this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable.'" *Id.* (quoting *Facebook Tracking*, 956 F.3d at 600). While the court in *Smith* acknowledged that the disgorgement theory arose in the context of Article III standing, it found that the "logic applies equally to the issue of whether plaintiffs have suffered 'damage' under CDAFA." *Id.* "Plaintiffs are damaged by not having received a share of the allegedly unjust profits generated from their data." *Id.* This reading is consistent with the CDAFA's statutory purpose which provides that "'protection of . . . lawfully created . . . computer data is vital to the protection of the privacy of individuals.'" *Id.* (quoting Cal. Penal Code § 502(a)).

Here, Plaintiff Farrell pleads that:

> 53. Plaintiff and Class members suffered economic injury because Defendant, *inter alia*, surreptitiously, and without consent: (i) accessed and scanned Plaintiff's and Class members' computers and computer systems which contained confidential and sensitive information that they did not intend to disclose to Defendant or other unknown third parties; and (ii) obtained Plaintiff's and Class members' confidential and sensitive information without consent and without compensating Plaintiff and Class members for the fair value of the information.
>
> 54. Moreover, Defendant profited by appropriating Plaintiff's and Class members' valuable data without sharing those profits with Plaintiff and Class members. It would not be equitable to allow Defendant to keep those profits, which were generated by its violations of Plaintiff and Class members' privacy interests.

Compl. ¶¶ 53-54. Plaintiff Farrell's allegations are sufficient to plead damage or loss under the CDAFA. *See Smith*, 2025 WL 2210002, at *3; *see also Briskin v. Shopify Inc.*, 2026 WL 161441, at *8-9 (N.D. Cal. Jan. 21, 2026) (adopting logic in *Smith*); *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *5 (N.D. Cal. Jan. 12, 2026) (plaintiffs' failure to receive a portion of the

defendant's profits from their data would constitute damage under the CDAFA); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109-10 (N.D. Cal. 2025) (disgorgement of profits constitutes damage or loss under the CDAFA).

As Defendant indicates in its motion (MTD at 24-25), some courts have reached a contradictory conclusion to that set forth in the cases cited above. Plaintiff Farrell respectfully submits that the line of case law to which he cites is better reasoned than the cases cited by Defendant and is consistent with Ninth Circuit authority. *See Briskin*, 2026 WL 161441, at *9 ("while the court is unclear how to square those two lines of cases, it does appear that the Ninth Circuit has concluded that plaintiffs can establish standing for both Article III and CDAFA purposes under a disgorgement theory, and [the defendant] hasn't presented a convincing reason to contravene that authority.").

**VI. Plaintiff Farrell Sufficiently Pleads a Right of Publicity Claim.**

Disregarding Plaintiff Farrell's allegations and the reasonable inferences therefrom, Defendant argues that Plaintiff Farrell's right of publicity claim fails to satisfy the pleading threshold of Fed. R. Civ. P. 8 or the "plausibility bar" of Fed. R. Civ. P. 12. MTD at 25. To support its argument, Defendant recasts Plaintiff Farrell's well-pled allegations as merely alleging what Defendant could potentially do. *See id.*

Fed. R. Civ. P. 8 merely requires that a pleading contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8. In the context of Rule 8, "a successful complaint is clear as to which counts are brought against which Defendants, the elements of those counts, and how each of those Defendants meets those elements." *E.M. v. Cal. Dep't of Ed.*, 2025 WL 1883826, at *4 (N.D. Cal. July 8, 2025). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the

complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). The court also must "draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

Here, after detailing Defendant's browser extension scanning scheme, Plaintiff Farrell alleges:

> On information and belief, Defendant engaged in the above-alleged conduct to, *inter alia*, amass a profile and build a dossier on Plaintiff so that it could use his name and likeness in advertising and selling products to him, or soliciting purchases of products, merchandise, goods, or services by him. Indeed, Defendant uses information it collects and intercepts to "conduct research and development for [its] Services in order to" increase "growth and engagement" on its Services.

Compl. ¶ 25. Plaintiff Farrell later alleges the elements of a right of publicity claim under Cal. Civ. Code § 3344, stating that § 3344(a) "prohibits a person from knowingly using 'another's name . . . or likeness, in any manner . . . for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods, or services, without that person's prior consent . . . .'" Compl. ¶. 85 (quoting Cal. Civ. Code § 3344(a)). Plaintiff Farrell then alleges how Defendant violated § 3344(a):

> As alleged herein, Defendant violated Cal. Civ. Code § 3344 because Defendant used the names and likenesses of Plaintiff and Class members for purposes of advertising or selling, or soliciting purchases of Defendant's products, merchandise, goods and/or services, without the consent of Plaintiff or Class members. Specifically, Defendant scanned the computers and computer systems of Plaintiff and Class members for information about their browser extensions in order to amass profiles and build dossiers [on] Plaintiff and Class members that Defendant then used to advertise its products to Plaintiff and Class members and solicit the purchase of its products, merchandise, goods, and/or services. Plaintiff and Class members did not consent to the above-described use of their names and likeness.

*Id.* ¶ 87.

Far from Plaintiff Farrell falling short of Rule 8's pleading standard or failing to plausibly allege a violation of § 3344(a), Plaintiff Farrell: (a) alleged Defendant's underlying scheme; (b) described the purpose of that scheme and how it resulted in a right of publicity injury to Plaintiff Farrell; (c) explained the basis for alleging that Defendant violated Plaintiff Farrell's right of publicity for a commercial purpose (citing to Defendant's own materials); (d) alleged the elements

of a § 3344(a) violation; and (e) applied the allegations to those elements. Based on the actual allegations, Plaintiff Farrell has sufficiently pled a right of publicity claim.

Defendant reaches the opposite conclusion only by ignoring Plaintiff Farrell's allegations and the reasonable inferences therefrom. Contrary to Defendant's self-serving argument, Plaintiff Farrell does not allege that Defendant could "potentially build some kind of profile" (MTD at 25), rather Plaintiff Farrell alleges, on information and belief, that Defendant engaged in the underlying conduct in order to amass a profile and build a dossier. Compl. ¶ 25. Similarly, contrary to Defendant's argument that even if it amassed profiles and built dossiers, Plaintiff Farrell has failed to allege that Defendant used those profiles and dossiers for a commercial purpose (MTD at 25-26), Plaintiff Farrell alleges that Defendant used the profiles and dossiers to advertise its products to Plaintiff and solicit Plaintiff to purchase Defendant's products. *Id.* ¶¶ 25, 87.

**CONCLUSION**

For the foregoing reasons, Plaintiff Farrell respectfully requests that the Court deny Defendant's motion to dismiss in its entirety. To the extent the Court grants any part of Defendant's motion to dismiss, Plaintiff Farrell respectfully requests that the Court grant him leave to file an amended complaint. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (lower court erred by denying leave to amend after dismissing amended complaint).

Dated: July 28, 2026

**DRURY LEGAL, LLC**

By: *_/s/ Scott R. Drury_*
Scott R. Drury

Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

**ARISOHN LLC**
Joshua D. Arisohn (admitted *pro hac vice*)
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

**KINGFISHER LAW APC**
Nithin Kumar
P.O. Box 492415
Los Angeles, CA 90049-9998
Telephone: (408) 930-3580
Email: nithin@kingfisherlawapc.com

*Attorneys for Plaintiff*